KEMIN FOODS, L.C., and CATHOLIC
UNIVERSITY OF AMERICA,

     Plaintiffs,

v.                         Case No. 8:07-cv-1308-T-33TGW

OMNIACTIVE HEALTH TECHNOLOGIES,
INC., and OMNIACTIVE HEALTH
TECHNOLOGIES PRIVATE, LTD.,

     Defendants.

_____/

**ORDER**

This matter is before the Court pursuant to Defendant
OmniActive Health Technologies Private Limited's Motion to
Dismiss (the "Motion to Dismiss" Doc. # 115), filed on October
15, 2008.  On October 28, 2008, Plaintiffs filed their
Memorandum of Law in Opposition to the Motion to Dismiss.
(Doc. # 138).  Upon due consideration, the Court will deny the
Motion to Dismiss.

## I.  **Introduction**

Plaintiff Kemin Foods, L.C., (hereafter "Kemin") is an
Iowa limited liability company that develops purified lutein
for human consumption. (Doc. # 83 at ¶ 10).  Lutein is an
antioxidant and "has been found to decrease the incidence of
age-related macular degeneration, which is one of the leading
causes of blindness in the elderly." (Id.)  Kemin's purified

lutein is made using a patented process. Specifically, on January 17, 1995, United States Patent No. 5,382,714 (the "714 Patent"), titled "Process for Isolation, Purification and Recrystallization of Lutein from Saponified Marigold Oleoresin and Uses Thereof" was legally issued to inventor Frederick Khachik. (Id. at ¶ 14). Plaintiff Catholic University of America (hereafter the "CUA") is the owner, through assignment, of the 714 Patent, and Plaintiff Kemin is the exclusive licensee of the 714 Patent. (Id. at ¶ 15).

OmniActive Health Technologies Private, Ltd. (hereafter "OmniActive India") and OmniActive Health Technologies, Inc. (hereafter "OmniActive USA") are the maker and distributor, respectively, of "Lutemax" and "Lutemax Free Lutein," lutein products that compete with Plaintiffs' lutein products. Plaintiffs sue Defendants for patent infringement, mismarking, false advertizing, as well as related claims. Defendants argue that this Court lacks personal jurisdiction over OmniActive India.[1] This Court will address this finite jurisdictional issue before reaching the merits of Plaintiffs' claims against Defendants.

---

[1] In the Motion to Dismiss, Defendants do not appear to question this Court's jurisdiction over OmniActive India's subsidiary company: OmniActive USA. However, in an abundance of caution, this Court will address jurisdictional issues with respect to both Defendants.

## II. __Legal Standard__

A court is obligated to dismiss an action against a defendant over which it has no personal jurisdiction. <u>Posner v. Essex Ins. Co.</u>, 178 F.3d 1209, 1214 n. 6 (11th Cir. 1999). On a motion to dismiss for lack of personal jurisdiction, such as the present one, the plaintiff bears the burden of establishing, by a preponderance of the evidence, that the court has jurisdiction over the defendant. <u>Avocent Huntsville Corp. v. Aten Int'l, Co.</u>, 552 F.3d 1324, 1328 (Fed. Cir. 2008).

The determination of whether the court has personal jurisdiction over a defendant is governed by a two-part analysis. First, the court must determine whether the plaintiff has alleged facts sufficient to subject the defendant to Florida's long-arm statute. <u>Future Tech. Today, Inc. v. OSF Healthcare Sys.</u>, 218 F.3d 1247, 1249 (11th Cir. 2000)(citing <u>Sculptchair, Inc. v. Century Arts, Ltd.</u>, 94 F.3d 623, 626 (11th Cir. 1996)).

Second, once it has determined that the long-arm statute is satisfied, the court must determine whether plaintiff's assertion of jurisdiction comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice. <u>Sculptchair, Inc.</u>, 94 F.3d at

626 (quoting <u>Int'l Shoe Co. v. Wash.</u>, 326 U.S. 310, 316 (1945)). This case involves patent law, and therefore, the Court has evaluated the law of the Federal Circuit, when required. <u>See</u> <u>3D Sys. v. Aarotech Labs.</u>, 160 F.3d 1373, 1377 (Fed. Cir. 1998)("While we defer to the interpretation of a state's long-arm statute given by that state's highest court, . . . when analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law, rather than regional circuit law, applies.") Despite this requirement, the same basic test utilized in the Eleventh Circuit for determining personal jurisdiction applies in the Federal Circuit. <u>See</u> <u>Akro v. Luker</u>, 45 F.3d 1541, 1543 (Fed. Cir. 1995); <u>Beverly Hills Fan Co. v. Royal Sovereign Corp.</u>, 21 F.3d 1558, 1565 (Fed. Cir. 1994); <u>Robinson v. Giamarco & Bill, P.C.</u>, 74 F.3d 253, 256 (11th Cir. 1996).

The Court must conduct a two-part inquiry to determine whether personal jurisdiction exists under Florida's long-arm statute and the Due Process Clause of the United States Constitution. The Court will conduct this analysis in detail after a complete discussion of the factual background.

## III. <u>Factual Background</u>

### A.  <u>OmniActive USA and OmniActive India: two sides to the same coin</u>

OmniActive India is the foreign parent corporation of its wholly owned subsidiary OmniActive USA. (Doshi Dep. at 18:20-25; 19:1). OmniActive USA, organized under the law of Delaware, has its headquarters in New Jersey. (Doc. # 83 at ¶ 7). OmniActive India, organized under the law of India, has its principal place of business in Maharashtra, India. (Id. at ¶ 8). OmniActive India owns the U.S. registered trademarks for "Lutemax Free Lutein" and "Lutemax Lutein Esters." (Id.) OmniActive India engages in the research, development, design, manufacturing, and processing of lutein products. (Bhattacharya Decl. ¶¶ 4-5; Deshpande Dep. at 52:17-20; 53:1-25; 54:1-25; 55:1-25; 56:1-25).

OmniActive, USA, on the other hand, exclusively promotes, distributes, and sells lutein products made by OmniActive India in the United States. (Doshi Decl. ¶¶ 2-6). OmniActive India's lutein products routinely arrive by air from India at either New York's JFK airport or New Jersey's Newark airport. (Doshi Dep. at 42:15-25; 43:1-9). OmniActive USA takes title to the lutein products after such products clear customs. (Id. at 55:8-22). However, there is no contract between OmniActive USA and OmniActive India regarding the transfer of title. (Id. at 55:19-20).

In the United States, all sales of OmniActive India-

manufactured lutein products are distributed by OmniActive USA from its New Jersey location. (Bhattacharya Decl. ¶¶ 5, 8; Doshi Decl. ¶¶ 2, 6; Hayes Decl. Ex. 5 at 57, 152). OmniActive India does not use any other distributor in the United States. (Bhattacharya Decl. ¶¶ 5, 8; Doshi Decl. ¶¶ 2, 6; Hayes Decl. Ex. 1 at 5-8; Response to Interrog. # 2).

OmniActive USA has only one employee, its president, Hiren Doshi. (Doshi Dep. at 18:12-13). OmniActive USA has three individuals on its board of directors; however, OmniActive USA has never held a board meeting. (Doshi Dep. at 27:20-22). It appears that OmniActive USA is funded solely by OmniActive India, and all of OmniActive USA's assets equal only $20,000. As alleged by Plaintiff, OmniActive USA is kept "afloat" by OmniActive India and is generally undercapitalized. (Doc. # 83 at ¶ 9).

Further, OmniActive USA and OmniActive India share a single website (www.omniactives.com). OmniActive India owns 100% of the stock in OmniActive USA. OmniActive India has covered the defense costs of both OmniActive India and OmniActive USA since the inception of this suit, even though Plaintiffs initially sued only OmniActive USA, and not

OmniActive India.[2]

## B. Alleged Infringement and Tortious Conduct

Plaintiffs learned that Defendants supplied lutein products in the Middle District of Florida, and believe that Defendants' "Lutemax" products infringe the 714 Patent. (Doc. # 83 at ¶ 11).[3] Furthermore, Plaintiffs allege that Defendants falsely advertised and falsely marked certain products under a different patent: U.S. Patent No. 6,743,953. (Id. at ¶ 12). Last, Plaintiffs argue that Defendants made false and misleading claims in advertisements, marketing materials, and communications with customers about Kemin's products.[4]

Thus, on July 25, 2007, Plaintiffs filed suit against OmniActive USA. (Doc. # 1). Plaintiffs thereafter filed an

---

[2] Plaintiffs' original complaint, filed on July 25, 2007, was lodged against OmniActive USA only. (Doc. # 1). Plaintiffs filed an amended complaint on July 1, 2008, naming OmniActive India as a co-defendant. (Doc. # 83).

[3] Specifically, Defendants supplied Medical Ophthalmics with samples in Oldsmar, Florida, which is located in the Middle District of Florida.

[4] For example, Plaintiffs allege that Defendants falsely represented that Kemin does not directly manage quality whereas Defendants do. (Doc. # 83 at ¶ 12 (b).

amended complaint against both OmniActive USA and OmniActive India alleging patent infringement of the 714 patent (count one), false marking (count two), false advertising (count three), violation of Florida Statute Section 817.41, which criminalizes false advertising (count four), violation of Florida Statute Section 501.201, the Florida Deceptive and Unfair Trade Practices Act (count five), violation of Florida Common Law of Unfair Competition (count six), and product disparagement (count seven). (Doc. # 83).

OmniActive USA filed its answer, affirmative defenses, and counterclaims on July 21, 2008. (Doc. # 89). OmniActive USA's counterclaims against Kemin and CUA include: declaratory judgment of noninfringement of the 714 Patent (counterclaim one), declaratory judgment of unenforceability due to inequitable conduct (counterclaim two), unfair competition in violation of the Lanham Act (counterclaim three), unfair competition in violation of Florida Common Law (counterclaim four), and violation of the Florida Deceptive and Unfair Trade Practices Act (counterclaim five). (Doc. # 89).

On September 24, 2008, OmniActive USA filed a motion for summary judgment of non-infringement (Doc. # 103) and on October 15, 2008, OmniActive India filed the present Motion to Dismiss (Doc. # 115). This Court will now address the Motion

to Dismiss.

## IV. **Analysis**

Plaintiffs' response to the Motion to Dismiss presents several putative bases for this Court's jurisdiction over OmniActive India, including detailed analysis concerning piercing the corporate veil between OmniActive USA and OmniActive India. However, upon due consideration, this Court determines that it is unnecessary to pierce the corporate veil in order to maintain personal jurisdiction over both defendants. The Court specifically concludes that OmniActive India's own conduct brings it into the purview of Florida's long-arm statute. Further, upon due consideration, this Court concludes that the Constitution's due process protections and corresponding notions of fair play and substantial justice will not be offended by this Court's jurisdiction over both Defendants.

### A. **Florida's Long-Arm Statute**

Florida's long-arm statute is satisfied when a defendant, or its agent, commits a tortious act within Florida. See Fla. Stat. § 48.193(1)(b). Plaintiffs argue that Defendants fell within the long-arm statute's scope when they committed a tortious act in Florida – that is distributing allegedly

infringing lutein products in Oldsmar, Florida.[5] "Patent infringement constitutes a tortious act within the meaning of Florida's long-arm statute for the purposes of establishing personal jurisdiction." <u>J.P. Morgan Trust Co. v. Potash Corp. of Saskatchewan, Inc.</u>, case no. 3:05-cv-587-J-32-MCR, 2007 U.S. Dist. LEXIS 23872 at *10, n. 8 (M.D. Fla. Mar. 30, 2007); <u>Mars, Inc. v. Coin Acceptors, Inc.</u>, 527 F.3d 1359, 1365 (Fed. Cir. 2008)("Patent infringement is a tort.").

Defendants filed affidavits and voluminous exhibits in support of their motion to dismiss. Likewise, Plaintiffs tendered affidavits and exhibits in support of their contention that this Court has jurisdiction over Defendants. A specific burden-shifting scheme applies for cases such as this one. As stated in <u>Walt Disney Co. v. Nelson</u>, 677 So. 2d 400 (Fla. 5th DCA 1996):

> The burden of demonstrating the applicability of § 48.193 may initially be met by pleading facts within a jurisdictional basis contained in the statute. If the plaintiff has pled a prima facie case for jurisdiction, a simple motion to dismiss for lack of jurisdiction must fail, as a motion to dismiss, without more, challenges only the facial sufficiency of the jurisdictional pleading. If, however, the defendant supplements the motion with an affidavit contesting jurisdiction, then the burden returns to the plaintiff who must, by

---

[5] Without agreeing that they infringed Plaintiffs' patent, Defendants stipulate that patent infringement is a tort. (Doc. # 115 at 10).

affidavit or other sworn statement, prove a
sufficient jurisdictional basis.

Id. at 402; see also Future Tech. Today, Inc. v. OSF
Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000)(quoting
Prentice v. Prentice Colour, Inc., 779 F. Supp. 578, 583 (M.D.
Fla. 1991)(After plaintiff alleges sufficient facts supporting
the exercise of personal jurisdiction under a long-arm
statute, "the burden shifts to the defendant to make a prima
facie showing of the inapplicability of the statute. If the
defendant sustains this burden, the plaintiff is required to
substantiate the jurisdictional allegations in the complaint
by affidavits or other competent proof, and not merely
reiterate the factual allegations in the complaint").

By alleging patent infringement in Oldsmar, Florida,
Plaintiffs made a prima facie case for jurisdiction against
Defendants in the Amended Complaint; therefore, if Defendants
had filed a simple motion to dismiss, the motion would have
then failed. However, Defendants supplemented their motion
with affidavits contesting jurisdiction, which caused the
burden to shift back to Plaintiffs to prove "by affidavit or
other sworn statement" a sufficient basis for jurisdiction.
See Walt Disney Co., 677 So. 2d at 402.

In some circumstances the Court is required to hold an
evidentiary hearing to resolve disputed facts if they are

11

essential to the jurisdictional determination. See <u>Venetian</u> <u>Salami Co. v. Parthenais</u>, 554 So. 2d 499, 503 (Fla. 1989)(holding when both parties have filed affidavits that cannot be harmonized, the trial court must hold a limited evidentiary hearing to determine the jurisdiction issue). There is no need for an evidentiary hearing in this case. Upon review of the affidavits, in which Plaintiffs' contention that Defendants sold the allegedly infringing lutein products in the Middle District of Florida are is not contested, this Court determines that Plaintiffs have carried their burden.[6] Defendants do not agree that their lutein products infringe Plaintiffs' patent; however, the Defendants do not appear to contest that their product was sold in the Middle District of Florida.[7]

---

[6] See <u>Trintec Indus. v. Pedre Promotional Prods.</u>, 395 F.3d 1275, 1280 ("in patent litigation the injury occurs at the place where the infringing activity directly impacts on the interests of the patentee, which includes the place of the infringing sales. Thus, if an infringing product is sold in the District of Columbia, that sale causes tortious injury there.")(internal citations omitted).

[7] As a motion for summary judgment of non-infringement is currently pending, this Court will decide that matter of patent infringement at a later date. The first hurdle of Plaintiffs' case, the propriety of this Court's jurisdiction over Defendants, must be cleared before the Court conducts any analysis of the underlying allegations of patent infringement.

Furthermore, because Plaintiffs sue Defendants for specific conduct--distributing lutein products in Oldsmar, Florida on one occasion--rather than having "substantial and not isolated activity" in Florida, the Court's jurisdiction over Defendants would be "specific" rather than "general." See Florida Statute Section 48.193(2).

Accordingly, this Court will delve into the second inquiry: whether personal jurisdiction over Defendants in this Court offends constitutional safeguards.

**B.   Due Process**

Even where a defendant's conduct falls within the forum state's long-arm statute, the existence of personal jurisdiction over the defendant is not proper unless it comports with Due Process. The Due Process analysis has two parts. First, the Court must consider whether there are sufficient minimum contacts between Defendants and the forum state to satisfy the Due Process clause of the Fourteenth Amendment. Int'l Shoe, 326 U.S. at 316. Second, the Court considers whether maintenance of the suit in the forum state violates "traditional notions of fair play and substantial justice." Id.

**1.   Minimum Contracts**

In Silent Drive v. Strong Indus., Inc., 326 F.3d 1194,

1201 (Fed. Cir. 2003), the court set forth a three-part test for determining whether constitutional minimum contacts have been established: "(1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities within the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair." Id. (internal citations omitted).

In creating the three-part test articulated above, the Silent Drive court drew upon the familiar case of World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980), which is particularly relevant to this Court's analysis. In World-Wide Volkswagen, the Court evaluated whether an Oklahoma court had jurisdiction over a New York-based distributor and a New York automobile retailer, which the plaintiffs contended, sold them a defective car. Id. at 287. The plaintiffs purchased the car in New York and were injured while driving the car in Oklahoma. Id. at 288. Neither of the New York defendants shipped or sold any products into Oklahoma, or sought to take advantage of the Oklahoma market. Id. at 289. Nevertheless, the plaintiffs argued that the defendants should have foreseen that their cars would be driven into Oklahoma.

The Court found that the Oklahoma court did not have personal jurisdiction over the New York defendants, ruling, "[F]oreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." Id. at 295. Instead, the Court noted, "the foreseeability that is critical to [D]ue [P]rocess analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hauled into court there." Id. at 297.

The Court continued its analysis, stating, "the forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." Id. at 297-98. The Court's determination that the defendants were not subject to jurisdiction in Oklahoma turned on the fact that the defendants had no association with the Oklahoma market and had not delivered their products into the stream of commerce with the expectation that they would be purchased in Oklahoma.

Further expounding upon the stream of commerce analysis,

the Court in <u>Asahi Metal Indus. Co. v. Superior Court of Cal.</u>, 480 U.S. 102 (1987), ruled that the defendant, a Taiwanese tire manufacturer, did not have minimum contacts with California when "the defendant acted by placing a product in the stream of commerce, and the stream eventually swept defendant's product into the forum State, but defendant did nothing else to purposefully avail itself of the market in the forum State." 480 U.S. at 110.[8]

With these constitutional principles in mind, the Court will conduct is minimum contacts analysis under the Federal Circuit's three-part test.

The Court finds that the first requirement--that the contacts involve some act which the defendant purposefully directs its activities at residents of the forum--is satisfied. As argued by Plaintiffs, "this is not a case where a manufacturer created a component part of a product that went through various distributors and retailers ultimately making its way into [Florida] . . . . [and it] is also not a case where the arrival of the infringing products

---

[8] The Court remarked that defendant Asahi did not do business in California; had no office, agents, employees, or property in California; did not advertise or otherwise solicit business in California; and did not create, control, or employ the distribution system that brought its valves into California, it did not possess minimum contacts with California. <u>Id.</u> at 112.

in Florida was happenstance." (Doc. # 138 at 10). The evidence on file shows that OmniActive India selected specific lutein products and provided them to OmniActive USA with the understanding that such products would be shipped by OmniActive USA directly to a particular customer within the Middle District of Florida.

Defendants make much of the fact that OmniActive USA, not OmniActive India, interacts with and delivers the products to customers within Florida. However, as explained in Vermeulen v. Renault, 985 F.2d 1534 (11th Cir. 1993), "a truly interstate or international business may not shield itself from suit by a careful but formalistic structuring of its business dealings." Id. at 1548 (internal citations omitted). In this case, Doshi from OmniActive USA received the order, contacted his supervisors at OmniActive India and asked them to fill the order. OmniActive India selected the products to meet the needs of the customers. OmniActive USA allegedly took title to the products and then shipped the products to customers in Florida.

This Court respects divisions between corporations and their subsidiaries, but determines that the "formalistic" division here is not enough to shield OmniActive India from this Court's jurisdiction, especially because OmniActive India

intended specific lutein products be delivered to a specific
Florida consumer and used its "subsidiary" as little more than
a delivery service.

Second, the requirement that the claim arises out of or
relates to the defendants' activities in the forum, is met.
Here, OmniActive India designed, tested, and manufactured
allegedly infringing products and directed its subsidiary,
OmniActive USA to send them to a specific customer in the
Middle District of Florida.

Finally, the Court finds that the third factor, that
jurisdiction is fair and reasonable, is satisfied.  In this
case, it is apparent that OmniActive USA would not continue to
exist as a distributor but for the products manufactured by
its parent, OmniActive India.  The relationship between
OmniActive USA and OmniActive India is the sole means by which
products manufactured by OmniActive India are distributed to
consumers in Florida. See Kaplan v. Daimler Chrysler, 99 F.
Supp. 2d 1348, 1353 (M.D. Fla. 2000)(denying German parent
company's motion to dismiss for lack of jurisdiction finding,
"[t]he relationship between [the distributor] and [the parent]
encompasses the main, if not sole, means by which products
manufactured in Germany are distributed to the United States
for sale.")

OmniActive India should have reasonably expected to be within the jurisdiction of the Florida courts upon deliberately placing its lutein goods on a plane to OmniActive USA, with the final destination of those goods being Oldsmar, Florida. See Viam Corp. v. Iowa Exp.-Imp. Trading, Co., 84 F.3d 424, 429 (Fed. Cir. 1996)("defendants, acting in concert, placed the device in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there"). (Citing Beverly Hills Fan, 21 F.3d at 1556).

**B.    Reasonableness: fair play and substantial justice**

Minimum contacts are necessary, but not sufficient for this Court's exercise of personal jurisdiction over a defendant. Akro Corp., 45 F.3d at 1545. Once a plaintiff makes the required showing that there have been sufficient minimum contacts with the forum state, the defendant may defeat jurisdiction by showing that exercise of personal jurisdiction would be unreasonable, that is, contrary to concepts of fair play and substantial justice. Beverly Hills Fan, 21 F.3d at 1568.

The litmus test for judging reasonableness requires the

Court to balance the burdens on the defendant in litigating in the forum state against various countervailing considerations, which include (1) the interests of the forum state; (2) the plaintiff's interest in obtaining relief; (3) judicial economy; (4) social policy. Wold-Wide Volkswagen, 444 U.S. at 477; Asahi Metal, 480 U.S. at 113.

The parties' arguments concerning these factors are vague and not helpful to this Court's analysis. Upon due consideration, the Court determines that its exercise of personal jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. The Court certainly recognizes that many miles separate Florida and India; nevertheless, in this global economy, such travel is becoming more common place every day. See World-Wide Volkswagen, 444 U.S. at 294 ("progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome.")

The Court agrees with Plaintiffs' remark that, because OmniActive India's "personnel play an active role in OmniActive USA's affairs and thus will likely already need to travel to Florida for trial on the claims against OmniActive USA." (Doc. # 138 at 9). It would not make sense to conduct two separate trials of Defendants when Plaintiffs essentially

allege that Defendants undertook the same conduct. Judicial economy demands a consolidated trial of these intertwined Defendants.

Further, the forum state has a strong interest in this case because it involves health supplements that were sold in Florida. The complaint alleges not only that infringing products were sold in Florida, but also that Defendants disseminated false advertising in the state of Florida concerning Plaintiffs' lutein products. The forum state has a strong motivation to protect its citizens from the ills of patent infringement and false advertisement. Plaintiffs have a corresponding interest in protecting their valuable patent against infringement and mismarking, and Plaintiffs allege that Defendants carried on such infringement and mismarking in Florida. As explained in <u>Beverley Hills Fan Co.</u>, "Economic loss occurs to the patent holder at the place where the infringing sale is made because the patent owner loses business there. This loss is immediate when the patent holder is marketing a competing product." 21 F.3d at 1571.

Finally, even though the witnesses and evidence regarding the lutein products' design and manufacture may be located in India, the lutein products were distributed in Florida, where the witnesses and evidence regarding the distribution of the

lutein products are located.

## V.    Conclusion

The Court finds that Defendants' contacts with Florida satisfy the minimum contacts test.    Acting together, Defendants sold allegedly infringing lutein products to a particular customer within the Middle District of Florida. Furthermore, the Court finds that its exercise of personal jurisdiction over Defendants comports with traditional notions of fair play and substantial justice.  Accordingly, this Court need not consider Plaintiffs' alter ego and corporate veil piercing analysis.  The Court will deny the Motion to Dismiss.

Accordingly, it is

**ORDERED ADJUDGED and DECREED** that:

Defendant   OmniActive   Health   Technologies   Private Limited's Motion to Dismiss (Doc. # 115) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 30th day of July 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record

22